as before at a total of four cases. Two of them are not being argued but will be submitted later today just on the briefs. Those two submitted cases are Appeal No. 3214 from 2009, Austin v. Merit System Protection Board, and Appeal 1508 from 2009, Tiger Team Tech v. Senesi Group. On our argument list we'll hear argument first in Gaghan v. Office of Personnel Management. Mr. Chester, good morning to you. Welcome to the court. Please proceed. Now let me clarify one thing. How do we correctly pronounce your client's name? Gaghan, Thomas Gaghan. All right, good. Second question. Am I correctly informed that you are waiving any time for rebuttal argument? That's correct, Your Honor. Very good. Please proceed. Your Honor, I just want to make three points. Number one, now that I have the time to sort of tie them together factually, I want to demonstrate that there's two Gaghan cases, really. There was one that was heard two years ago, and I believe that Judge Cleavanger was on that panel as well. Cleavanger is correct, Your Honor. In any event, you have to look at them together, I suppose, because my colleague brought a lot additional appendix things about the other case, and that is Tom Gaghan, a 31-year employee. Well, let me see if I understand where we're going here. My understanding is the other case involved a different type of retirement application. Yes. And that case is final. Yes. It's been affirmed on appeal by a panel of this court. Yeah. So it's totally done. So this is a separate appeal on a different theory. So I'm not sure I follow you that we have to consider the two cases together. See, to me, we aren't permitted to consider the two cases together because one is done, and the other is here to be decided. That's correct, Your Honor. Okay. And so then my sole comment on that is that whatever references there are in my esteemed colleague's brief to the first case is way less important than the facts of this case. Now, the facts of this case are after the first case was decided. Well, I think we know the facts. It seems like the problem here is that there's a case that suggests that the statute you want to rely on can't ever apply in the circumstances of someone like your client. Judge, the— Nesbitt. The Nesbitt case seems to say that a retirement that is being based on Section 8338, I believe the number is, can only apply to situations where the government acted lawfully. For example, if the government runs out of money and closes a whole office, and therefore all the workers in that office lose their job, that would be an example of a lawful government action that results in a separation of the employee from the government service without their initiative. But as I understand it, that's not the type of case we have here. So I have a question about whether Nesbitt doesn't block you from relying on 8338. Judge, I think Neblet can be easily distinguished, and that is—we were having trouble this morning, I'm afraid, my own fault. Neblet can be distinguished by the fact that all of these cases are unique to the facts and the circumstances. If the statute said— Wait a minute. What you get under 8338, if it applies and if you can qualify, is a certain type of—it amounts, in the case of your client, early retirement. He's going to be able to retire anyway soon, but he would be able to retire earlier if he got this involuntary separation in retirement under 8338, right? Yes. What's the theory of your case? What did the government do to your client? Well, Judge, I think the— Can you answer that? Yes, yes. Did the government do something to your client that you feel is wrong? Yes. And what was it? Is under the facts and circumstances of the first case, whenever it was decided, the government didn't do anything wrong in the first case. They exercised their discretion to revoke a determination going back three and four years at the time that the case was decided. So he was denied disability retirement benefits for three and four years. However, as the MSPB judge in this case said, when you look at the circumstances of that denial and the fact that Gagin would have been—one of the suggestions that the OPM made is that, well, I guess Gagin's remedy is an MSPB appeal 2,000 days later. Come back to the question. Answer the question. Is he saying that the government acted wrongly in that proceeding? Is Gagin saying? No. What Gagin is saying is that consistent with other cases that have been decided under section— But in your brief, you said that Gagin was misled by a wrongful action of the Office of Personnel Management. That's the argument you make in your brief. You can't make some different argument here. You're limited to what you said in your brief. If I said wrongful, which I don't believe I did, I was trying to finesse it like the that there was no wrongful conduct. It's just when you put it all together, it creates waivers of certain rights years and years later that perhaps are no fault of anyone. So is the answer to your case that the OPM can't reconsider—I mean, what you're essentially saying is that their reconsideration should be null and void. No, we lost the first case on that, so I'm not trying to reopen or re-argue the first one, but the point is that when you look at the procedural rights—for instance, Gagin was never terminated, and the NEPLIT is a termination case with an allegation that it was a constructive discharge. In other words, that's the statute. So what's your theory here? The theory is that the NEPLIT constructive discharge case simply doesn't apply to this. This case is absolutely unique. And as it was discussed on the record, at least in a telephone conference with the MSPB judge, she had asked around in that office, and anyone encountered anything like that? The answer was no. So it was in the opinion of the MSPB judge, a factual nexus of first impression. But that is consistent, Your Honors, with the way cases have been decided under Section 8336 when you're looking at the words involved. We're reviewing a decision by the board, all right? And the board makes a finding, I believe, that the appellant was given misleading information. Am I reading—I'm reading that the agency's reconsideration is reversed? Is that what—? Right. Well, no. The MSPB judge below, the initial decision was that he was subject to an involuntary termination under the facts and circumstances. I don't think the law requires that a quote-unquote involuntary termination requires misconduct on anyone's part. Well, I thought that's what we precisely held in the NEPLIT precedent. Well, not under the circumstances of this case, Judge. I don't think— Well, the circumstances—the differentiation seems to be if the government acts lawfully within its powers properly, you can file under 8338. If the government acts wrongly or illegally or without authority, you have to file under Chapter 75. That seems to be the heart of the NEPLIT cases I read in. You disagree? No, that's what NEPLIT says. That's right. Well, we're bound by NEPLIT. It's a precedent of a prior panel that we must follow under the rules of precedence here. So, like it or not, we have to follow NEPLIT. So, unless you can show that somehow you're out from under the force of NEPLIT, then we have no choice. Well, Judge, my argument as to why NEPLIT doesn't apply is that NEPLIT was, I suppose, at the earliest possible time, a choice on the part of the NEPLIT litigator to proceed under Chapter 83 rather than under Chapter 75, an MSPB appeal. Gagin procedurally doesn't fit into that mold. He was never terminated. He never had the procedural right to an MSPB appeal. Maybe the conclusion is he doesn't fit under Chapter 83 or Chapter 75. Not under Chapter 75 for the reason you just said, he was never fired, and not under Chapter 83 because his office wasn't closed and the other things that are listed in that chapter that lead to early retirement rights for somebody who's, quote, involuntarily separated. Right, Judge. That's the language I'm asking you to focus upon. That is, NEPLIT brought a concept, well, wrongful this, wrongful that, to two words, involuntary termination. And what the MSPB judge in the initial decision did here is say, you know, no one seems to be at fault. It's just that the circumstances created an involuntary termination, and that is thoroughly consistent with all the other cases that have been decided under Chapter 83. There's fewer than a dozen, and each one of them almost routinely and uniformly says, you look at the unique facts and circumstances of the case to decide what the words involuntary termination. It's not quite that simple. The two court of claims cases that you cited were under different law. The law was changed in 1978 when Congress passed this gigantic civil service statute. So those old cases don't seem to me to do you any good. They were under a different set of laws than apply to your client. At least the more recent ones, Judge, that is the case. One of the more recent ones, the petitioner lost. So how does that help you? If the person trying to get under Chapter 83 was told, no, he doesn't get under Chapter 83, how does that help you get under Chapter 83? By distinguishing NEPLIT in that NEPLIT required, NEPLIT would exclude the possibility of this type of retirement benefit if there was no government wrongdoing. In other words, it has to do with government wrongdoing. That's the way I read NEPLIT, too. That's right. However, the first Gagin case that was in front of this panel demonstrated that there was no misconduct. That's how the first Gagin case fits into this nexus. I'm really struggling to understand how you've helped us by answering the questions that both Judge Clevenger and Judge Prost asked you along the line of what is your theory here? On what argument do you get under Chapter 83? You agree that there's no wrongful government action here. No, but the government action had the effect of causing an involuntary termination. And you don't have to have misconduct to have an involuntary termination, consistent with the other cases that have been decided under Chapter 83. But if there's an involuntary termination, then maybe this goes to what relief you ought to be entitled to. If there's an involuntary termination, then the relief is you should get your job back. You're seeking here only that he be put on retirement, right? Well, Judge, there's no— Has he ever contended that my harm here was that I was involuntarily terminated and therefore I ought to be put back to work? They ought to retire me. His testimony in the MSPB proceeding, for some reason there's no record, the testimony was that when he lost the other one, he said, okay, I've never been terminated, so take me back. And they didn't. So Gagin has never been given his pink slip, so to speak. He's never been terminated. Instead, according to our theory, he mistakenly— But, Mr. Chester, at the end of your blue brief on page 10 in the statement of relief sought, all you asked the court to do is to order that he be, quote, granted discontinued service retirement benefits. You're not asking that he be reinstated. You're asking that he be given this particular type of retirement benefit. That's correct. And no, we're not asking to file an MSPB appeal to a discharge that never took place 2,000 days after the retirement, under disability retirement in 01. We're not asking to do anything non-proton. We're suggesting to your honors that he fall squarely within the involuntary termination language of Chapter 83. What piece of paper—usually there's an SF-50 when you enter the government, and there's usually a piece of paper that's signed when you leave—what's the official designation of his departure from federal service? Under U.S. Postal Forms, it would appear on a Form 50. What's it say? Does it say removed? Does it say retired? Does it say—what's it say? Well, his Form 50—from the other case, I'm afraid—his Form 50 says disability retirement as the reason for separation. And when the OPM, exercising their right under the statute to revisit that years later, revoked it, and we're suggesting that that event, affirmed by this court as within the lawful authority of the OPM, created a fact and circumstance that made the initial disability retirement an involuntary separation, according to the language of Chapter 83, as interpreted by several cases. Let me ask you a different sort of question. We've been asking questions about the law, whether Chapter 83 applies or Chapter 75 applies, and what the law of Nesbitt is and so forth. Much of your argument, to my ear, seems to be suggesting that we shouldn't be worried about strict rules of law or precedents. We should be exercising some kind of broad equity oversight over what should be the benefit. But even if we had the authority to be a court in equity, unbound by the statutes, any chapter in the Act, why shouldn't your client be stopped from asking for the equity relief of being given this retirement benefit when he essentially complains that, they told me I was going to be able to retire for a disability, and then they later said no, the disability didn't apply. But the mistake was caused by him, because he made a request for disability without having the facts fully set forth, and when the true facts were later found out by the Office of Personnel Management, they cancelled their original decision allowing that kind of disability. So he created the very problem that he's now complaining about. So why should we allow somebody to create the problem and then complain that because the problem happened, I should get a special kind of retirement? I have to agree with you on that. In my young life, I always like to have the equities. So let me suggest the following from, again, from what my colleague added to her brief as the facts that were mistaken. She's your adversary. Well, I'm not sure if that's my, the OPM is my adversary. The young lady from Justice Department is my colleague. I have to correct you in that respect. I'm sorry. But getting to what was added here, what was the mistake? Well, Gagan had been treating with a psychiatrist, trying a variety of medications, five or six years before this disability retirement. What OPM, the postal inspector, he was, Gagan got caught up in a drug case. He was wiretapped talking to a relative and became an accomplice looking at what, a 30 or 40 year sentence. So he did his 30 months on a plea. He ruled. He shouldn't have probably, but I wasn't his attorney. Well, we're certainly not going to re-litigate that here today. But the young postal inspector figured that the war on drugs was not sufficient if Gagan was getting a disability retirement. So he wrote to the inspector general of the OPM and said, this can't be right. So the OPM reviewer said, you're right. There is something we missed in the record back in 01. And the thing they missed in the record, it's identified here, that Gagan had perfect attendance and he had perfect evaluations. So basically you're saying he didn't mislead OPM. OPM misread their own file. If that's right, then my concern disappears and we'll check it out by looking at the record. Well, it's stated there. We've given you a considerable amount of extra time. I think it was a non-exact reason by OPM, but we did lose that one the last time. So I can't re-argue that. Sorry. That's true. All right. Thank you. Ms. Stern. Welcome back to the court. We've had your help in many cases for a considerable period of time.  I will try my best, your honors. May it please the court. Maybe you can just fit this case under Neville's force. Absolutely. The resolution of this case is in Neville's control. You have to do that to prevail, right? By Neville. Absolutely. Because Mr. Gagan's retirement was voluntary at the time he separated. It was pursuant to his voluntary application for disability. And the only way it can be rendered involuntary is his argument, which we believed his argument on appeal to be, was that in retrospect it was involuntary because it was based on OPM's improper approval of his disability retirement application and giving him that erroneous information that he qualified for a disability retirement. And based on that, he argues apparently that his resignation was involuntary. But that kind of involuntary resignation based on misinformation is exactly the kind of agency contribution to the retirement that this court said in Neblett renders the involuntary resignation not voluntary. The improper approval of the initial disability retirement was the, if I'll call it, unlawful act. Exactly. That would be the misinformation, which is the equivalent of an unlawful act pursuant to Neblett. It doesn't quite fit very well, I don't think, in the category of misinformation. It's not like they told him a lie or they told him the opposite of what everybody would know the truth is. He applied for disability benefits. They looked at the papers. They said it looked like you qualified. Okay, application granted. That's not like misleading somebody by giving them information that you know is not true. Well, misleading information, it can be unintentional. The fact that OPM at that moment believed that he was qualified. It wasn't really information. It was an adjudication. They had to make a determination or adjudication of his petition. He filed voluntarily. They did. They later thought they had mistakenly adjudicated the case. But it still was an adjudication. It wasn't like factual information being conveyed to him that he then relied on and suffered some harm. What was the determination? The notion is, I mean, if we render a decision in a case that's favorable to someone but we would get reversed by the Supreme Court, have we misled the person that we ruled in favor of? Well, first of all, I think this is a little bit different because it's OPM itself reconsidering it. So I certainly wouldn't want to view this court of misleading anyone. He really doesn't matter. He really should try to meet Judge Gleisinger head on here. Let's change the hypothetical slightly. A panel decides a case and then the court en banc rehears the case and comes to a different result. Does that mean that the panel misled anybody when they made an adjudication that later was thought to not be correct? No. I wouldn't say that the court misled anyone. What's the difference here in these two OPM adjudications? It doesn't matter because the only way that his separation could be deemed involuntary would be if it was based on misinformation of some kind. That's the only way. I thought the distinction here was between whether or not the conduct was lawful or unlawful. I'm sorry? Isn't the distinction to be drawn here between where he needs to go as to whether or not the government, the action was lawful or unlawful? Yes. If it's unlawful conduct and if it's unlawful agency action that led to his separation being retroactively deemed an involuntary separation, then his only remedy is to undo the separation by virtue of its involuntariness and seek reinstatement. So if the separation is unlawful for any reason, which is what he needs, he needs an involuntary separation to qualify for 8336. But the only way he gets to an involuntary separation is if there's some unlawful agency action involved, in which case the whole thing is undone because he's never separated, which he needs to be separated for purposes of getting a discontinued service annuity. So where does that apply to the facts in this case? You're saying he should have gone under Chapter 75. That's because he should have gone back after the second OPM decision. He should have gone back to the agency and said, I want my job back. Exactly. And then the agency would have, I don't know, if he had taken it back, we wouldn't be here. So if they say, no, you can't, then he has an allegation that he can pursue for an unlawful discharge. Yes. He can appeal to the Merit System Protection Board, arguing that his separation was, in fact, involuntary because he simply separated because he thought it was unlawful. So are you inviting a third round of litigation by this gentleman? He now will ask his job back, and then we'll have a Chapter 75 analysis. We'll have another appeal. We still don't have a final resolution of whether he gets the pension he's seeking or not. Oh, we'll have a final resolution of the annuity question. We won't have a final resolution on whether he is entitled to reinstatement and back pay. That would be a new case. But we can't come to a final answer on the annuity question in this case on Neblett until we decide whether or not there was unlawful conduct by the government. Yes or no? We can come to a final resolution. Because if there was unlawful conduct by the government... Tell me again, because I'm just dumb. What was the unlawful conduct by OPM? What law did they break? Well, I would say... Let me see if I can explain a little bit differently. Just to give you a sense. I mean, like in a hospital workplace environment... Right. The unlawful conduct was... That's an unlawful act, and that causes you involuntarily to leave, right? So what... The problem is this. The way I would answer it is this. The unlawful conduct is arguably, and bear with me for one minute here, arguably is OPM's misinformation. I'm going to call it that, saying he's qualified for retirement benefits. But even if that's not wrongful conduct, if it's not, then he doesn't have an involuntary separation. He can't have it both ways. Either he was voluntarily separated because he was acting on, let's say, correct information at the time OPM made it, but then he doesn't get a discontinued service annuity because he wasn't involuntarily separated. Or he can make the case that he was involuntarily separated because he relied on misinformation, but then he doesn't get a discontinued service annuity because this court has said in Eblett that wrongful information is not the kind of lawful agency action that leads to a discontinued service annuity. Well, what should happen to somebody in Gagin's situation? He seems to not fit too well into Chapter 83 and not fit too well, if at all, into Chapter 75. Is the answer that, well, Congress could enact some other chapter that would cover people like him, but they haven't done so yet, so he's out of luck? Is that the basic bottom line here? Well, I don't know that I would agree with the premise that he doesn't fit well into Chapter 75. I think that he could make the case under Chapter 75 that his separation was involuntary because at the time he agreed to the separation based on OPM's approval of his retirement application. There is a regulation that I should point out. There is a regulation at 5 CFR 831.1207. Even after OPM approves an application, a voluntary employee-initiated application for retirement, the employee can withdraw it at any time. So he went forward with his separation voluntarily pursuant to OPM's approval of the retirement application. The only way he gets that separation to become involuntary... But he's saying, I wouldn't have done it if I knew they were going to take it away from me. That's what he's saying, basically. Well, that does make some sense, doesn't it? I mean, he said, you're going to give me a disability retirement, so I'm going to leave. It makes perfect sense. And it's why it might render his resignation involuntary for purposes of a Chapter 75 action and getting his job back. But it doesn't make it a... No, it can be involuntary for 75, but not for Chapter 86. Oh, it's exactly what Neblitt said. Absolutely, Your Honor. If it's involuntary, he has to come back. He has to ask for his job back and demonstrate that he's really willing and able to have his job. You're talking about an individual who's already documented that he can't work. That's why his initial disability retirement application was approved. But that approval was taken away, so it's not proven that he can't work. Well, it was taken away for different reasons. It was taken away because he didn't exhaust a sick leave, not because he didn't meet the qualifications of not being able to work. That's not correct, Your Honor. The record will demonstrate that the OPM took away their disability retirement application. They went through all the medical evidence, and they said at the end, we find that you did not demonstrate that you were not capable of working. That was the basis for them changing their mind. They reviewed all of the medical evidence again, the depression, and they said that he didn't demonstrate that he was not capable of working. Anything further? Nothing further, Your Honor. Thank you very much. Thank you very much. We thank both counsel. The appeal was submitted.